UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BMG MUSIC, a general partnership,
CAPITOL RECORDS, INC., a corporation;
MUSICAL PRODUCTIONS, INC., a
corporation; SONY BMG MUSIC
ENTERTAINMENT, a general partnership;
SONY DISCOS, LLC., a limited liability
corporation; UMG RECORDINGS, INC., a
corporation; WARNER MUSIC LATINA
INC., a corporation; WEA
INTERNATIONAL, INC., a corporation,

       Plaintiffs,   **REPORT AND RECOMMENDATION**
  - v -
               CV 05-5903 (FB)(VVP)

ROMA'S RECORD CORPORATION, d/b/a
ROMA'S RECORDS a/k/a ROMA'S
MUSIC, a corporation; and MAX ROMERO
a/k/a MAXIMINO ROMERO, an individual,
       Defendants.
-----------------------------------------------------------x

  This matter was referred by the Honorable Frederic Block to the undersigned to issue a report and recommendation as to the damages to be awarded to the plaintiffs as against the defaulting defendants, Roma's Records Corporation (hereinafter "Roma's Records"), and Max Romero (hereinafter "Romero). The case involves the defendants' infringement of copyrights which are exclusively licensed by the plaintiffs BMG Music, Capitol Records, Inc., Musical Productions, INC., Sony BMG Music Entertainment, Sony Discos LLC., UMG Recordings, Inc., Warner Music Latina Inc., and WEA International, Inc.(hereinafter "plaintiffs"). *See* Complaint ¶ 1.

  **A.**  **ENTRY OF DEFAULT JUDGMENT**

  "It is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court."

*Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001), *quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999) (internal quotations omitted). When deciding whether to enter default the court considers various factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later would be obligated to set aside the default on defendant's motion. *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d at 281 *citing* Moore's Federal Practice § 55.20 (2)(b) (3d ed. 1999). In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiffs have filed affidavits of a licensed process server attesting to service of the summons and complaint in this action upon the defendants. Defendant Roma's Records was served pursuant to Section 311(1) of the New York Civil Practice Laws and Rules ("CPLR") by delivery of the summons and complaint to Carina Gomez, who the process server attests is an individual authorized to accept service on behalf of Roma's Records at its place of business in Flushing, Queens. Service on the defendant Romero was accomplished by delivering the summons and complaint to Carina Gomez, a person of suitable age and discretion at Roma's Records, and mailing copies of the same to the defendant's address in accordance with the provisions of Section 308(2) of the CPLR. Such methods of service are authorized by Rule 4 (c)(1) of the Federal Rules of Civil Procedure. The defendants have failed to interpose an

answer, or otherwise respond to the complaint. Nor have the defendants responded to the plaintiffs' application for default. The grounds for default are therefore clearly established, and there are no grounds for believing the defaults are based on a good-faith mistake or technicality. *See Cablevision Systems New York City Corporation v. Leach*, No. 01 Civ. 9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Finally, based on the defendants' inaction, it is unlikely that the court will be compelled at some future date to enter an order vacating the default judgments. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

### B. LIABILITY

By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court accepts the following facts as true.[1]

The plaintiffs are various companies engaged in the business of producing, manufacturing, distributing, selling, and licensing the distribution and sale of sound recordings on phonorecords such as compact discs and other formats. *See* Complaint ¶ 17. The plaintiffs are among the leading manufacturers of phonorecords in the United States, and their names and reputations are widely and favorably known. *Id.* ¶ 18. Each plaintiff is a member of the

---

[1]Although the plaintiffs allege in the complaint various violations of federal law, the plaintiffs' application for default and damages as set forth in the proposed judgment is limited to the defendants' violations of the Copyright Act, and therefore the court does not reach the related claims.

Recording Industry Association of America (hereinafter "RIAA"), an organization whose member companies create, manufacture, or distribute an overwhelming majority of all legitimate sound recordings sold domestically. *Id.* ¶ 22. In conjunction with this business, the plaintiffs themselves own valid copyrights, or own exclusive rights to distribute copyrighted sound recordings embodied on their phonorecords (hereinafter "the copyrighted sound recordings") as listed on Schedule A annexed to the Complaint. *Id.* ¶ 20, Sched. A. The copyrighted sound recordings are listed by each of the plaintiffs on the Principal Register of the United States office of Copyright Registration. *Id.* The court further accepts as fact that the plaintiffs' copyrighted sound recordings are reproduced and distributed through various retailers and include the various plaintiffs' names and logos, along with copyright notices. *Id*. ¶¶ 19-21, Sched. A.

Defendant Roma's Records is a corporation operating in Flushing, New York. *Id.* ¶ 14. Defendant Romero is an officer, director, or shareholder of Roma's Records, and owns, operates or otherwise controls Roma's Records. *Id.* ¶¶ 15, 25. The allegations of the complaint establish that illegal copies of the plaintiffs' copyrighted sound recordings have been offered for sale and distributed at Roma's Records. *Id.* ¶¶ 23-24, 29. The pleadings further establish that the defendant Romero personally participated in, or had the right to supervise, direct and control the infringing activities at Roma's Records. *Id.* ¶ 25. The well-pleaded allegations of the complaint also establish that the plaintiffs, after having representatives observe the illegal copies offered for sale at Roma's Records, sent written communications to the defendants advising them of the infringements which were ignored. *Id.* ¶¶ 27, 32, 41.

In order to establish a claim for copyright infringement, the plaintiff must establish (1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work or some

other violation of the exclusive rights afforded to the owner by the Copyright Act. *See Twin Peaks Productions v. Publications Int'l. Ltd.,* 996 F.2d 1366, 1372 (2d Cir.1993); *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir.1997).

Pursuant to section 410(c) of the Copyright Act, a certificate of copyright registration raises a presumption that the copyright is valid. *See* 17 U.S.C. § 410(c). Section 101 of the Copyright Act holds that a "'[c]opyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." 17 U.S.C. § 101. The plaintiffs, as either the registered owners of the copyrights in question, or the exclusive licensees of copyrights held by others, are thus "copyright owners" who are entitled to sue for infringements of the copyrighted sound recordings. *See* 17 U.S.C. § 501(b); *Essex Music, Inc. v. ABKCO Music and Records, Inc.*, 743 F. Supp. 237, 241-42 (S.D.N.Y. 1990).

These facts are sufficient to establish Roma Records' liability to the plaintiffs for violation of the Copyright Act which states that,

> (a) Anyone who violates any of the exclusive rights of the copyright owner . . . . is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a). Among the exclusive rights of the copyright owner is the right to reproduce, and to authorize others to reproduce, the copyrighted work in copies and to distribute the copies to the public by sale. *See* 17 U.S.C. § 106. The allegations of the Complaint also establish Romero's individual liability in view of the assertions that he participated in and supervised the infringing activities. In this Circuit "all persons and corporations who participate in, exercise control over, or benefit from [a copyright infringement] are jointly and severally liable as copyright infringers." *Bartell v. Onbank, et al.,* No. 95 Civ 1807, 1996 WL 421189, *2

(N.D.N.Y.), *quoting Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir.1985). Therefore, damages and other relief may be assessed against both defendants.

## C. DAMAGES

Having provided notice to the defaulting defendants, the court is able to receive affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered affidavits submitted by the plaintiffs, and concludes that they provide a basis for the relief recommended below. The defendants have made no submissions.

The evidence offered in the plaintiffs' declarations establish the following facts. The plaintiffs assigned an investigator from RIAA, Wanda Rosado, to supervise an investigation stemming from the suspected illegal distribution of CDs by the defendants. *See* Declaration of Wanda Rosado ("Rosado Decl.") ¶¶ 1, 6. Rosado has received extensive training from qualified personnel at RIAA, as well as other members of the recording industry in identifying unauthorized sound recordings. *Id.* ¶ 3. In March 2003, Rosado instructed Dominick Barletta, an investigative consultant, to visit the defendants' store. *Id.* ¶ 7. Mr. Barletta reported to Rosado that Roma's Records' inventory contained at least fifty illegal CDs. *Id.* He purchased one of these CDs, entitled "Salsa Picante," which contained at least eight (8) unauthorized copies

of the plaintiffs' copyrighted sound recordings. *Id.* ¶¶ 7-8. Upon inspecting the CD purchased by Barletta, Rosado ascertained the disc had certain characteristics which revealed it was illegal, such as poor artwork, an inaccurate spelling of the manufacturer's name, and the lack of a standard copyright notice. *Id.* ¶¶ 8-9.

In May 2003, the RIAA sent another investigator trained in identifying pirated and copyrighted sound recordings to the defendants' record store. *See* Declaration of William Ortiz ("Ortiz Decl.") ¶¶ 4-6. Ortiz also observed more than fifty (50) illegal CDs for sale, and purchased one entitled "Salsa Mix 2003," which contained five (5) unauthorized copies of plaintiffs' copyrighted sound recordings. *Id.* ¶ 7. Ortiz's independent inspection revealed that the CD contained poor artwork, the manufacturer's name and address information was inaccurate, and it lacked a standard copyright notice. *Id.* ¶ 8. Thus, in Ortiz's professional opinion the CD was not genuine.

In October 2003, Rosado sent a third investigator, Antonio Fernandez, to the defendants' premises. *See* Rosado Decl. ¶ 10. Fernandez also reported more than fifty (50) illegal CDs at Roma's Records, the average price of which was $12, far below market value. *Id.* Fernandez purchased eight (8) CDs from the defendants, five of which are listed in the Complaint. *Id.* The five CDs contained at least ten (10) unauthorized copies of plaintiffs' copyrighted sound recordings. *Id.* Rosado's inspections of the CDs revealed that they contained similar errors to those found on the CD purchased by Barletta. *Id.* ¶ 11.

Following these visits by the inspectors, an attorney for the RIAA sent the defendants cease and desist letters in February and April 2004. *See* Declaration of Matthew Kaplan ("Kaplan Decl.") ¶ 3, Exh.2. The defendants initially responded to the letters, and the parties

entered into settlement negotiations, which ultimately proved to be fruitless. *Id.* ¶ 3. Therefore, in April 2005, the RIAA sent investigator Luis Castillo to Roma's Records. *See* Declaration of Luis Castillo ("Castillo Decl.") ¶ 7. At the store, Castillo observed at least twenty (20) counterfeit CDs for sale, and purchased five (5) of the illegal CDs containing at least 5 unauthorized copies of the plaintiffs' copyrighted recordings. *Id.* ¶ 8. Similar to the findings of the previous investigators, Castillo's inspection also revealed that the CDs were counterfeit. *Id.* ¶¶ 9-10.

>The Copyright Act provides that,
>
>the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in this action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If there is a finding that the defendants' infringement was committed willfully the court in its discretion "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). In calculating a defendant's exposure for an award of statutory damages, the focus is on the number of works infringed, not the number of copies or the number of acts of infringement. *See, e.g., Twin Peaks Productions*, 996 F.2d at 1381; *Antenna Television v. Aegean Video Inc.*, No. 95-CV-2328, 1996 WL 298252, at *11 (E.D.N.Y. April 23, 1996); *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003).

The court has broad discretion in determining the range of statutory damages. *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1116 (2d Cir.1986). In making a statutory award determination, in addition to willfulness, courts consider such factors as the expenses saved and

profits reaped by the defendants, the revenues lost by the plaintiff, and the deterrent effect of the award on other potential infringers. *Id.*, 807 F.2d at 1117; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234, 73 S.Ct. 222, 226, 97 L.Ed. 276 (1952). Statutory damages play a dual role in that they compensate for injury and deter wrongful conduct. *Yurman Design, Inc.,* 262 F.3d at 113-114. Statutory damages are appropriate in instances where it is difficult to determine plaintiff's actual damages. *Van Der Zee v. Greenidge,* No. 03 CV 8659, 2006 WL 44020, at *1 (S.D.N.Y. 2006); *Granada Sales Corp. v. Aumer*, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.,* 866 F. Supp. 780, 782 (S.D.N.Y.1994). However, an award of statutory damages does not entitle the plaintiff to a windfall recovery. *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 677 F. Supp. 740, 769 (S.D.N.Y.1988).

In order to establish willfulness, the plaintiffs must prove that the defendants had actual knowledge that they were infringing plaintiffs' copyrights, or acted with a reckless disregard of a strong probability that the conduct constituted infringement. *See Island Software and Computer Service, Inc., v. Microsoft Corp.,* 413 F.3d 257, 263 (2d. Cir. 2005); *Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir.1992); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir.2001). Knowledge "need not be proven directly, but may be inferred from the defendant's conduct." *N.A.S. Import Corp*, 968 F.2d 250, 252, *citing Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y.1983).

The plaintiffs' have satisfactorily demonstrated that the defendants willfully infringed at least some of the copyrighted sound recordings. Each investigator sent by the RIAA contends

that they observed more than twenty (20), if not fifty (50), unauthorized sound recordings copyrighted by the plaintiffs being offered by the defendants to the public. *See* Rosado Decl. ¶¶ 7-10, Ortiz Decl. ¶ 6, and Castillo Decl. ¶ 7. The investigators inspections of the purchased CDs reveal that all of the counterfeit products contained the same substandard packaging, inferior artwork, and the lack of standard copyright notices. Therefore, at the very least the defendants had constructive notice that some of the CDs they were offering for sale to consumers were unauthorized copies.

The plaintiffs have further demonstrated that the defendants also had actual knowledge that their actions constituted copyright infringement. Following three visits by RIAA inspectors, the plaintiffs sent two cease and desist letters in 2004 to the defendants advising them that they were infringing the plaintiffs' copyrights, warned the defendants of the potential legal as well as monetary consequences continuing infringement could bring, and offered to enter into a settlement agreement. *See* Kaplan Decl. ¶ 3. The defendants then entered into settlement discussions, but when these negotiations broke down, the defendants continued their infringing activity as documented by investigator Castillo. *Id.*

The plaintiffs have requested statutory damages of $35,000 each for twenty-eight copyrighted sound recordings[2] infringed by the defendants for a total award of $980,000. The plaintiffs correctly assert that they may seek statutory damages of up to $150,000 per infringement, and have chosen not to. Nevertheless, they do not offer enough evidence to justify the damages they seek. Notably, the plaintiffs offer very little evidence to demonstrate the

---

[2]This number represents the number of albums listed on Schedule A annexed to the complaint which contain copyrighted sound recordings infringed by the defendants. Since some of the albums contained multiple copyrighted sound recordings infringed by the defendants, the total number of copyrighted sound recordings that were infringed by the defendants is somewhat higher.

revenue lost from the defendants' failure to sell legitimate copyrighted recordings. Inspector Fernandez noted that most of the unauthorized CDs were offered for sale at $12, which he asserts is well below the legitimate retail price. *See* Rosado Decl. ¶ 10. However, the plaintiffs fail to demonstrate what the appropriate market value of the CDs should have been. Despite sending investigators to Roma's Records on numerous occasions, the plaintiffs have offered no evidence establishing the size of the store, the number of shelves containing CDs, an approximation of the total number of CDs being offered for sale, or the number of customers in the store, information which would enable the court to draw inferences about the scale of the defendants' business. Absent such information, the court is unable to gauge the volume of unlawful sales that took place at Roma's Records and the extent of the potential impact of the defendants' infringing activities. In addition, the court notes that the plaintiffs offered to settle this matter with the defendants for only $35,000, *see* Kaplan Decl. ¶ 3, Exh. 2, and now seek almost thirty times that amount in damages.

Lost revenues or profits, however, are only some of the considerations in setting statutory damages. In addition, any award of statutory damages should be sufficient to penalize the defendants, as the plaintiffs have established that the defendants' conduct was undertaken willfully and for purposes of commercial advantage or private financial gain. The defendants clearly obtained and offered for sale a number of copies of the sound recordings which they must have known were unauthorized and continued to take such actions even after the plaintiffs requested they cease their infringement. Obviously, the purpose of offering illegitimate recordings for sale at a cheaper rate than legal copies was to attract customers to the defendants' business establishment for commercial gain. Absent substantial financial penalties, the

defendants will likely continue to illegally offer for sale plaintiffs' copyrighted sound recordings, and other such establishments will follow suit. The plaintiffs cannot practicably investigate all these infractions, nor should they be expected to do so.

The plaintiffs have also suffered financial losses that are not easily quantified, including damage to reputation because of the inferior quality and appearance of the infringed recordings, and loss of investment resources. The latter being unchecked could lead to a significant loss, as it results in the erosion of the plaintiffs' customer base, because the commercial establishments who rightly sell legitimate recordings will find it difficult to compete with those who do not.

In order to preserve the plaintiffs' reputation the defendants must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendants and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the plaintiffs. Given the above considerations, the court recommends that statutory damages be awarded in an amount equal to $10,000 per unauthorized sound recording, for a total award of $280,000.

### D. INJUNCTIVE RELIEF

In addition to statutory damages, the plaintiffs also seek injunctive relief. Specifically the plaintiffs seek to have the defendants enjoined from infringing sound recordings exclusively licensed to the plaintiffs. In order to be granted an injunction the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *King Vision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 507 (E.D.N.Y. 2006). Under the Copyright Act the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17

U.S.C. § 502 (a). Permanent injunctions are appropriate when infringement has been established and there is a substantial likelihood of future violations. *Boisson v. Banian, Ltd.*, 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003), *citing Central Point Software, Inc. v. Global Software & Accessories, Inc.,* 880 F. Supp. 957, 966 (E.D.N.Y.1995). The Second Circuit has held that an injunction should not be granted unless, absent an injunction, the movant will suffer irreparable harm. *See Main Events/Monitor Productions v. Batista*, No. 96 CV 5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). In order to satisfy the irreparable harm requirement, the moving party must show that the injury it will suffer is "likely and imminent" and that "such injury is not capable of being fully remedied by monetary damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

In actions for copyright infringement, the Second Circuit has repeatedly held that once a *prima facie* case has been made, irreparable harm is generally presumed. *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir. 2002). As the court has found that the plaintiffs have established the defendants' liability for copyright infringement, success on the merits has been clearly demonstrated. There is ample evidence in the record to suggest that absent an injunction the defendant will continue to infringe the copyrighted sound recordings resulting in a continued injury to the plaintiffs. The defendants were advised in the February and April 2004 cease and desist letters that they were infringing, but chose to ignore the warnings, even after entering into settlement discussions. Therefore, the court recommends that the defendants be permanently enjoined from infringing any of plaintiffs' respective copyrights in any manner including without limitation selling, offering to sell, or distributing unauthorized copies of the copyrighted recordings.

Section 503(b) of the Copyright Act states that,

> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

17 U.S.C. § 503(b).

As with injunctive relief, the court may order impoundment or forfeiture if the plaintiffs have established a *prima facie* case for infringement. *U2 Home Entertainment, Inc.,* 2003 WL 22889738, at *1. Forfeiture should only be ordered where the movant has established a showing of irreparable injury, and that alternative legal remedies are inadequate. *RSO Records, Inc. v. Peri,* 596 F. Supp. 849, 863 (S.DN.Y. 1984). Although, forfeiture and the ordered destruction of infringing works is within the court's discretion, such relief is appropriate to ensure against future infringements. *Antenna Television v. Aegean Video, Inc.,* No. 95-CV-2328 ERK, 1996 WL 298252, at *13 (E.D.N.Y. Apr. 23, 1996). Such relief may extend to any equipment used for infringing purposes as well. *RSO Records Inc. v. Peri,* 596 F. Supp at 863; 17 U.S.C. § 503(b).

Given the defendants' infringement of numerous sound recordings licensed exclusively to the plaintiffs, the forfeiture of the infringing copies is appropriate to protect against future infringement. Destruction or forfeiture of the infringing copies should be ordered as a matter of course because the defendants have no right to possess them. Moreover, by ignoring the plaintiffs' cease and desist requests, and defaulting in this action, the defendants have raised substantial concern that compliance with an injunction will not be forthcoming. Therefore, the

issuance of an order requiring the delivery of all unauthorized sound recordings in the defendants' possession to the plaintiffs is appropriate.

E. ATTORNEY'S FEES AND COSTS

The plaintiffs also seeks attorney's fees and costs, both of which are available to a prevailing party under the Copyright Act at the court's discretion. *See* 17 U.S.C. § 505. The plaintiffs are requesting $10,536.75 for attorney's fees which is detailed in three separate submissions. *See* Declaration of Matthew A. Kaplan ("Kaplan Decl.") ¶¶ 6-12, Supplemental Declaration of Matthew A. Kaplan in Further Support of Plaintiff's Motion for Default Judgment ("Supp. Kaplan Decl.") ¶¶ 4-5, and Second Supplemental Declaration of Matthew A. Kaplan in Further Support of Plaintiff's Motion for Default Judgment ("Second Kaplan Decl.") ¶¶ 4-5

The Second Circuit has adopted the "lodestar" approach in determining what constitutes a reasonable attorneys' fee. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). "The court's normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing . . . plaintiff is the calculation of a so-called "lodestar" figure, which is arrived at by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This assessment "should be based on 'prevailing market rates,' for comparable attorneys of comparable skill and standing in the pertinent legal community," *id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), which, here, is the Eastern District of New York, *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 220 (E.D.N.Y. 2004). To aid the court in determining the amount of reasonable attorney's fees, the plaintiff is required to submit evidence that provides a factual basis for a fee award. *Hensley v. Eckerhart,* 461 U.S. at 433-434. In this Circuit, that entails

submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work done, for each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). The court must then determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. at 896 n.11; *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See id.*, 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, Dkt. No. CV 02-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. Aug. 12, 2005). In addition, the court may exclude hours from the lodestar calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), *citing Hensley,* 461 U.S. at 434, *Luciano*, 109 F.3d at 116.

The court has concerns that the number of hours billed is somewhat excessive. The charges are certainly legitimate, but the time spent seems out of proportion to the work performed. The plaintiffs are seeking attorneys' fees for in excess of thirty billable hours for an action that resulted in a somewhat standard default judgment motion and damages inquest. The number of hours is quite high when one also considers that the plaintiffs' submissions in this case mirror those that they have made in similar actions in this district, some to which the plaintiffs in fact cite in their own submissions. *See* Kaplan Decl. ¶ 13, Exh. 7. The memorandum submitted in support of the default motion, and the declarations of the various investigators are almost identical to those filed by plaintiffs' counsel in the like actions. *Compare, e.g., the filings in Arista Records, LLC, et al., v. Furia Sonidera, Inc., et al.*, CV 05-

5906 (ILG)(RER); *BMG Music, et al., v. Montes Records, et al.*, CV 03-2693 (NGG)(SMG); *BMG Music, et al., v. Jesus Heras*, CV 05-5905 (SJ)(JO).

The rates also appear to be somewhat higher than the rates charged in this district.[3] A number of courts in this district have awarded attorney's fees at lesser rates of $200 to $300 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and approximately $100 for paralegals, *see, e.g, Morin v. Nu-Way Plastering,* Dkt. No. CV 03-405 (ARL), 2005 WL 3470371 (E.D.N.Y. Dec. 19, 2005), although other courts have concluded that these rates are outdated, and have awarded fees at higher rates. *Duke*, 2003 WL 23315463, at *2-3. The inadequately supported hourly rates and the surplus hours warrant a reduction of the fees claimed. The court has discretion to simply deduct a reasonable percentage of the hours claimed as a practical means of trimming a fee application. *See Kirsch v. Fleet Street Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). The court therefore recommends a 25% reduction in the fees to be awarded, which yields a total of $7,902.56.

The plaintiffs also seek an award of $1,135.34 for costs. A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client. *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d. Cir. 1989). The plaintiffs' submissions disclose explanations of expenses including copying costs, filing fees and service of process. *See* Kaplan Decl. ¶ 6, Exh. 5. These types of expenditures are generally compensable. *See, e.g., Levy v. Powell,* No. CV 00-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005); *Rotella v. Board of Educ. of City of New York*, No. CV-01-0434, 2002 WL 59106, at *1

---

[3]A review of the time sheets reveal that the following hours were billed. Partner David Wolf billed .1 hours at $425/hour. Partner Ralph Sutton billed .8 hours at $325/hour. Associate Matthew Kaplan billed 31.2 hours at $250/hour. Associate Mason Weisz billed 7.7 hours at $150/hour , and 7.45 hours at $165/hur.

(E.D.N.Y. Jan. 17, 2002); *Hine v. Mineta*, 253 F. Supp. 2d 464, 467 (E.D.N.Y.2003). Therefore, the court recommends that the plaintiffs be awarded $1,135.34 for costs.[4]

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that,

1. the plaintiffs be awarded $280,000 in statutory damages, as well as $7,902.56 in attorney's fees and $1,135.34 in costs, to be paid by the defendants;

2. the defendants be permanently enjoined from infringing any of plaintiffs' respective copyrights in any manner including without limitation selling, offering to sell, or distributing unauthorized copies of the copyrighted recordings; and

3. an order be entered requiring the delivery of all unauthorized sound recordings in the defendants' possession to the plaintiffs.

\*    \*    \*    \*    \*    \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298

---

[4]One of the cost items does give the court some pause, however. The plaintiffs seek $491.75 for copying costs incurred during the first month of the litigation. The submissions provide no information about the purposes for which such high copying costs were incurred at this early stage of litigation. But since the records submitted by the plaintiffs do refer to an invoice documenting the expense, *see* Kaplan Decl. ¶ 6, Exh. 5, it is adequately supported and should be reimbursed.

(2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiffs shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
August 19, 2009